**IN THE UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

MATEO RODERICO MIGUEL PEDRO,

Petitioner,

v.

MARKWAYNE MULLIN, ET AL.,

Respondents.

Case No. 5:26-cv-04303-MBK

ORDER GRANTING PETITION AND ISSUING A WRIT OF HABEAS CORPUS

Petitioner Mateo Roderico Miguel Pedro, a native and citizen of Guatemala, is in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Mr. Miguel Pedro entered the United States without inspection in 2011 and has remained in the United States since that time. During his time in the United States, Mr. Miguel Pedro married and has raised two U.S. citizen children, held steady employment to support his family, held leadership positions in his church, and has no criminal history.

On July 29, 2026, Immigration and Customs Enforcement ("ICE") officials stopped and arrested Mr. Miguel Pedro while he was driving home

from work. Mr. Miguel Pedro filed his initial habeas petition on July 31, 2026. This Court subsequently granted Mr. Miguel Pedro's request for a stay while he sought a bond hearing pursuant to the Ninth Circuit's decision in *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026). On September 1, 2026, an Immigration Judge ("IJ") held a bond hearing and found Mr. Miguel Pedro to be a flight risk because he had worked without authorization and failed to file income tax returns during his time in the United States.

Mr. Miguel Pedro subsequently filed a First Amended Petition in which he claims he did not receive a constitutionally adequate, individualized bond hearing and, accordingly, his continued detention is unlawful. In their amended Answer, Respondents argue that: (1) the Court lacks jurisdiction to consider Mr. Miguel Pedro's claims; (2) his claims are mooted by the bond hearing; and (3) the Court should decline to consider Mr. Miguel Pedro's claims because he has not fully exhausted administrative remedies by appealing the IJ's bond denial to the Board of Immigration Appeals ("BIA"). Respondents do not, however, defend the IJ's bond denial on the merits.

For the reasons that follow, the Court concludes that it has jurisdiction to consider Mr. Miguel Pedro's habeas claims and that he has shown a waiver of exhaustion is warranted due to the facts and claims in this case. Based on Respondents' failure to defend the merits of the IJ's bond determination, the Court concludes that the IJ abused its discretion by finding Mr. Miguel Pedro a flight risk. Because Respondents have not otherwise provided any basis for Mr. Miguel Pedro's continued detention, the Court grants the petition and

issues a writ of habeas corpus requiring Mr. Miguel Pedro's immediate release.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner Mateo Roderico Miguel Pedro is a native and citizen of Guatemala. Dkt. 15 at 13. Petitioner entered the United States without inspection in approximately 2011 and has continuously resided in the United States since then. *Id.* Throughout that time, Petitioner has developed extensive family, employment, and community ties within Southern California. *Id.* at 13-15. He is the father of two children, who are both United States citizens, and has maintained steady employment to take care of them. *Id.* at 14. Mr. Miguel Pedro's daughter has a language processing disorder for which she receives support to aid her education. Dkt. 13 at 90-116. Mr. Miguel Pedro is an active member of his church, for which he serves as a deacon and a spiritual advisor and has received numerous recognitions for his contributions to the church community. *Id.* at 124, 155-60. In support of his request for bond, Mr. Miguel Pedro submitted letters from family, friends, and church members attesting to Mr. Miguel Pedro's good character, dedication to his family and community, responsibility, and trustworthiness. *Id.* at 124-47. Mr. Miguel Pedro has no criminal history in United States. Dkt. 15 at 13.

On July 29, 2026, Petitioner was arrested by ICE officers while driving home from work. Dkt. 1 at 7. DHS issued a Notice to Appear charging Petitioner as inadmissible under INA § 212(a)(6)(A)(i) for being present in the United States without admission or parole. *Id.* On July 31, 2026, Petitioner filed a habeas petition arguing that Respondents improperly arrested and detained him under the putative authority of 8 U.S.C. § 1225(b) and have deprived him of a bond hearing under 8 U.S.C. § 1226(a). Dkt. 1. Petitioner

sought his release or, in the alternative, a bond hearing. *Id*. at 11. On August 7, 2026, Respondents filed an Answer in which they conceded that "Petitioner appears to be entitled to request and receive an initial bond hearing pursuant to *Rodriguez Vazquez v. Bostock*, --- F.4th ---, 2026 WL 2196424 (9th Cir. 2026) (finding "that aliens present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A).")." Dkt. 8 at 2. On August 10, 2026, Petitioner requested the Court hold the case in abeyance pending resolution of his request for a bond hearing before the Immigration Court. Dkt. 9. Respondents did not oppose the request, (Dkt. 11), and, on August 14, 2026, the Court granted it. Dkt. 12.

On September 1, 2026, an IJ held a bond hearing pursuant to 8 U.S.C. § 1226(a). In support of his request for release, Petitioner submitted evidence of continuous and stable residence, a bond sponsorship offer from a U.S. citizen backed by financial and employment statements, education and medical documentation for both of his minor U.S. citizen children, and various other documentation of support letters and community ties. Dkt. 13-2 at 1-160. Petitioner alleges that the IJ proceeded to conduct "an extraordinarily abbreviated custody proceeding" at which the IJ denied Petitioner's release as a flight risk. Dkt. 14 at 2. In its order, the IJ reasoned that Petitioner's lack of work authorization and unfiled tax returns were "substantial flight risk factors because they demonstrate an inability or refusal to comply with the laws of the United States." Dkt. 13-1 at 1. *Id.* The IJ observed that Petitioner had filed an application for cancellation of removal application, which referenced Petitioner's minor daughter and her individualized education program, but found his potential relief "inherently speculative." *Id.*

On September 2, 2026, Petitioner filed a supplement to his habeas petition with evidence from the bond proceedings, alleging he had not received

a constitutionally adequate individualized bond determination. Dkt. 13. On September 3, 2026, this Court issued an order finding that Petitioner's challenge to his bond hearing was not properly before the Court because it was not pled in his petition, but authorized Petitioner to file an amended petition. Dkt. 15. That same day, Petitioner filed his First Amended Petition ("FAP"). The FAP includes the following claims: (1) the IJ failed to provide a meaningful custody determination in violation of due process; (2) Petitioner's ongoing detention violates due process because it serves no legitimate government purpose; (3) the IJ did not provide constitutionally adequate procedures for Petitioner's bond hearing; and (4) the IJ's bond determination violates 8 U.S.C. § 1226(a). *Id*. at 25-41. Petitioner requests that the Court order his immediate release because Respondents had an opportunity to justify his continued detention but failed to do so. *Id*. at 38-39.

Respondents filed a response on September 3, 2026, in which they argue that the Court should not reach the merits of Petitioner's claims due to lack of jurisdiction, mootness, and exhaustion. Dkt. 16. Respondents did not challenge any of Petitioner's evidence or other factual allegations, or address the merits of Petitioner's claim that the IJ erred by finding him a flight risk. Petitioner filed a reply on September 4, 2026. Dkt. 17.

## II. DISCUSSION

The Court begins by addressing Respondents' arguments that the federal courts lack jurisdiction to consider Petitioner's habeas claims and that, regardless, the Court should not consider the claims because Petitioner has

failed to exhaust administrative remedies. The Court then addresses Petitioner's habeas claims on the merits.

**A. The Court Has Jurisdiction to Consider Petitioner's Habeas Claims**

**i. Petitioner's claims are not moot.**

Respondents assert that, "[b]ecause Petitioner has received a bond hearing, his claim for immediate release hearing [sic] is moot." Dkt. 16 at 2. But while the bond hearing may have mooted Petitioner's alternative request for relief in his initial petition, (Dkt. 1 at 11) (seeking, in the alternative to release, "a prompt individualized bond hearing"), the FAP seeks only Petitioner's release. Respondents provide no authority that a bond hearing moots a habeas petition seeking the petitioner's release. Respondents' cited authority is readily distinguishable: the decisions involve a request for a preliminary injunction, not a final determination of a petition, (Dkt. 16 at 1-2 (citing *Javier Gonzales v. Noem*, 5:25-cv-02054-ODW, Dkt. 16 (Aug. 25, 2025), and *Nororis Escobar v. Lyons*, 5:25- cv-02885-MRA, Dkt. 13 (Nov. 18, 2025)), or cases in which the petitioners solely sought a bond hearing as relief, (*id.* (citing *Zaragoza Mosqueda v. Noem*, 5:25- cv-002304-CAS, Dkt. 15 (Sept. 17, 2025) and *Torres v. Noem*, 5:25-cv-03566-SSS, Dkt. 13 (Jan. 15, 2026)).

A claim is moot only when "there is no longer a possibility" that a litigant "can obtain relief for his claim." *See Ruvalcaba v. City of Los Angeles*, 167 F.3d 514, 521 (9th Cir. 1999). "[W]hen, by virtue of an intervening event, a court [ ] cannot 'grant any effectual relief whatever' in favor of the [petitioner]," the proceeding should be dismissed as moot. *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (citation omitted). Here, Petitioner's bond hearing does not preclude the Court from granting any effectual relief. Indeed, the Court can still grant the only relief that Petitioner seeks in the FAP—his

outright release. The Court therefore rejects Respondents' argument that the FAP is moot.

**ii. 1226(e) does not bar review of bond determinations.**

Respondents also contend that, under 8 U.S.C. § 1226(e), the Court lacks jurisdiction "to re-weigh evidence or second guess the IJ's bond determination." Dkt. 16 at 3.

Section 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the application of this section shall not be subject to review." Section 1226(e) therefore precludes a noncitizen from "challenging a discretionary judgment by the Attorney General or a decision that the Attorney General has made regarding his detention or release." *Jennings v. Rodriguez*, 583 U.S. 281, 295 (2018) (plurality) (cleaned up).

Nonetheless, the federal courts retain jurisdiction to consider constitutional claims or questions of law regarding bond determinations, including "mixed questions" involving the application of law to facts. The Ninth Circuit has found that the immigration courts' determination that a noncitizen presents a danger by clear and convincing evidence is one such "mixed question" amenable to federal court review. *See Martinez v. Clark,* 124 F.4th 775, 783 (9th Cir. 2024). Although *Martinez* involved a dangerousness determination, the same rationale applies to detention decisions based on flight risk. As *Martinez* recognizes, an IJ applies the same nine-factor test set forth in *Matter of Guerra*, 24 I. & N. Dec. 37 (BIA 2006) "[t]o determine whether an alien is a danger to the community *or a risk of flight*." *Martinez*, 124 F.4th at 783 (emphasis added).

Although what constitutes dangerousness or a flight risk "is malleable and involves agency discretion, *Wilkinson* instructs that this is still a legal standard so long as federal courts can 'assess whether an IJ correctly applied

the statutory standard to a given set of facts.'" *Id*. (quoting *Wilkinson v. Garland*, 601 U.S. 209, 221 (2024)). *Martinez* establishes that federal courts should review an IJ's dangerousness determination—and its corollary, flight risk—under an abuse of discretion standard. *Id.* at 784 ("When questions require a close review of agency-found facts, like the 'dangerousness' determination, we review for an abuse of discretion").

Here, Petitioner challenges whether the IJ applied appropriate procedures at his bond hearing, which is a legal issue reviewed *de novo*, and the IJ's determination that he is a flight risk based on his work and tax history, which is a mixed question involving the application of law to fact under *Martinez*. The Court therefore rejects Respondents' argument that this Court lacks jurisdiction over Petitioner's claims.

**B. Petitioner Has Shown that a Waiver of Exhaustion is Warranted**

Respondents argue that the Court should decline to address Petitioner's claims because he has not fully exhausted administrative remedies. Dkt. 16 at 4. Petitioner reserved appeal of his bond denial before the BIA, for which his opening brief is due on October 1, 2026. Dkt. 13-1 at 2. Petitioner concedes that he has not fully exhausted administrative remedies, but argues that exhaustion should be excused based on the nature of his claims and "because further administrative review cannot provide timely or adequate relief from Petitioner's continuing loss of liberty." Dkt. 15 at 8-10.

While administrative exhaustion is not a jurisdictional requirement for habeas petitions filed under 28 U.S.C. § 2241, courts typically "require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241" as a "prudential matter." *Ward v. Chavez*, 678 F.3d 1042, 1045 (9th Cir. 2012). "Courts may require prudential exhaustion if (1) agency expertise makes agency consideration necessary to

generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (internal citations and quotations omitted). Because exhaustion is not jurisdictional, courts "have discretion to waive a prudential requirement." *Laing v. Ashcroft*, 370 F.3d 994, 998 (9th Cir. 2004). A court may waive the exhaustion requirement when "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." *Id.* at 1000 (internal quotations and citations omitted).

The Court finds that a waiver of exhaustion is appropriate this case for three reasons. First, an appeal is not necessary for this Court's review of Petitioner's claims. Petitioner challenges the constitutionality of the procedures applied at his bond hearing. It is not clear that the BIA would consider such a claim because it "does not have jurisdiction to determine the constitutionality of the statutes it administers." *Padilla-Padilla v. Gonzales*, 463 F.3d 972, 977 (9th Cir. 2006); *See In Re Fuentes-Campos*, 21 I. & N. Dec. 905, 912 (BIA 1997) ("It is well settled that we lack jurisdiction to rule on the constitutionality of the Act and the regulations we administer."). While the BIA would have authority to review the IJ's ultimate determination that Petitioner is a flight risk, that determination—based on unfiled tax returns—is not "fact-intensive" and "'administrative appellate record is not necessary to resolve'" Petitioner's challenge to it. *Miri v. Bondi*, No. 5:26-CV-00698-MEMF-MAR, 2026 WL 622302, at *10–11 (C.D. Cal. Mar. 5, 2026) (quoting *Hernandez v. Sessions*, 872 F.3d 976, 989 (9th Cir. 2017)). That is particularly

true here because Respondents do not defend the IJ's determination on the merits.

Second, Petitioner would suffer significant irreparable harm if forced to wait for the BIA to render a decision on his appeal. Petitioner is the primary provider for his spouse and two minor children, one of whom has a learning disability and requires an individualized education program. Dkt. 13-2 at 90. Although it is difficult to predict with certainty, Petitioner would likely need to wait at least six months in detention for the BIA to issue a decision on his appeal, during which time he would remain separated from his family. "In 2024, EOIR data showed an average processing time of 204 days for bond appeals." *Rodriguez v. Bostock*, 802 F. Supp. 3d 1297, 1307 (W.D. Wash. 2025). The delays have likely increased since 2024. As the Department of Justice recently reported, "between fiscal year 2015 and the end of fiscal year 2025, the Board's pending case load increased more than five-fold—from 37,285 pending appeals to 202,946 pending appeals." Appellate Procedures for the Board of Immigration Appeals, 91 Fed. Reg. 5267, 5270 (Feb. 6, 2026). During this time, the BIA has been unable to "keep up with incoming filings while tackling the backlog in any meaningful way." *Id*. While DOJ is implementing new reforms to "streamline" BIA review and reduce this backlog, these efforts will likely take time—particularly because DOJ recently reduced the BIA's membership from 28 to 15 members. *Id*.

Third, the Government is responsible for delaying review of the legality of Petitioner's custody. As Petitioner alleges, and Respondents do not dispute, Petitioner was wrongly arrested and detained under the putative authority of 8 U.S.C. § 1225(b), under which he was deprived of the procedural protections to which he was entitled under 8 U.S.C. § 1226(a). Those protections include an initial custody determination by ICE and the right to seek immediate

review at a bond hearing before an IJ. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19. *See generally Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022) ("Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change."). While Petitioner ultimately obtained a bond hearing before an IJ, it was only after Petitioner was forced to file a habeas petition and Respondents confessed error. *See* Dkt. 8 at 2 (acknowledging that Petitioner was properly subject to the detention and release authority under Section 1226(a) pursuant to *Rodriguez Vazquez v. Bostock*, 183 F.4th 1160 (9th Cir. 2026)). Under these circumstances, the Court does not believe it prudent to further delay review of Petitioner's habeas claims.

Accordingly, the Court waives the prudential exhaustion requirement.

**C. Petitioner's Detention is Unlawful**

The Court now turns to the merits of Petitioner's claims. As set forth above, Petitioner advances several claims challenging his ongoing detention under the Due Process Clause and 8 U.S.C. § 1226(a). Dkt. 15 at 25-41. Although pled as four distinct claims, the Court construes the FAP to essentially present two related challenges: (1) that the IJ failed to conduct a meaningful bond hearing; and (2) that the IJ erred by finding Petitioner a flight risk based solely on his failure to file tax returns and speculative immigration relief, and without regard to the substantial evidence he presented that he is not a flight risk. *Id*. In their amended Answer, Respondents summarize the IJ's written order and argue that "Petitioner's

claims of receiving an 'abbreviated' and 'conclusory' hearing are unfounded." Dkt. 16 at 2. However, Respondents do not defend the IJ's decision on the merits or otherwise dispute that the IJ's flight risk determination was an abuse of discretion.

Respondents' failure to dispute Petitioner's claims that the IJ erred is a concession. *See Rojas v. Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D. Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim"); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims").

In light of Respondents' non-opposition, the Court concludes that that the IJ abused its discretion by denying Petitioner's release as a flight risk. Under the abuse of discretion standard, the reviewing court determines whether the IJ "'applied the correct legal standard'" and may not "'reweigh evidence.'" *Martinez*, 124 F.4th at 785 (quoting *Konou v. Holder*, 750 F.3d 1120, 1127 (9th Cir. 2014)). An IJ "'abuses its discretion when its decision is arbitrary, irrational, or contrary to law,'" *Pleitez-Lopez v. Barr*, 935 F.3d 716, 719 (9th Cir. 2019) (quoting *Avagyan v. Holder*, 646 F.3d 672, 678 (9th Cir.

2011)), or "'when it fails to state its reasons and show proper consideration of all factors when weighing equities and denying relief.'" *An Na Peng v. Holder*, 673 F.3d 1248, 1253 (9th Cir. 2012) (quoting *Ahmed v. Holder*, 569 F.3d 1009, 1014 (9th Cir. 2009)).

Petitioner's bond hearing was conducted pursuant to 8 U.S.C. § 1226(a). At a Section 1226(a) bond hearing, if "the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz*, 53 F.4th at 1197 (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The Court therefore proceeds to determine whether the IJ abused its discretion by finding that Petitioner failed to show he is not a flight risk by a preponderance of the evidence.

In its order, the IJ found Petitioner was a flight risk because he had worked without authorization and failed to file income tax returns, which "demonstrate an inability or refusal to comply with the laws of the United States." Dkt. 13-1 at 1. The IJ acknowledged that Petitioner "has potentially cognizable relief in the form of a 42B cancellation based upon one child's ongoing IEP program at school." *Id.* However, because Petitioner had submitted only a portion of his 42B application, the IJ found that Petitioner's potential likelihood of winning relief was "inherently speculative, which is yet another flight risk factor." *Id.*

Petitioner challenges the IJ's determination on the ground that the IJ did not meaningfully examine his extensive evidence that he has a stable, settled life in the United States and is unlikely to flee. Dkt. 15 at 2. The Court agrees. Among other evidence, Petitioner submitted financial statements indicating consistent on-time rent payments and stable residence, (Dkt. 13-2

at 18-19), a bond sponsorship offer from a U.S. citizen backed by financial and employment statements, (*id.* at 44-86), education and medical documentation for both of his minor U.S. citizen children, (*id.* at 88-122), and extensive documentation and support letters indicating family and community ties, (*id.* at 123-160). The IJ's order acknowledges none of this evidence.

While an IJ is not required "to discuss each piece of evidence submitted," "where there is any indication that the [IJ] did not consider all of the evidence before it," such as "failing to mention highly probative or potentially dispositive evidence," an IJ's general statement that it considered all the evidence is insufficient. *Cole v. Holder*, 659 F.3d 762, 771-72 (9th Cir. 2011). "In particular, where potentially dispositive testimony and documentary evidence is submitted, the [IJ] must give reasoned consideration to that evidence." *Id.*; *Martinez*, 124 F.4th at 785. Here, the IJ did not discuss the evidence of Petitioner's sponsor, residential history, and deep family and community ties, even though such factors are central to a flight risk determination. *See Matter of Guerra*, 24 I&N Dec. at 40 (instructing that IJs may consider, among other factors, "(1) whether the alien has a fixed address in the United States; (2) the alien's length of residence in the United States; (3) the alien's family ties in the United States . . . ."); *Matter of A-L-S-*, 29 I. & N. Dec. 794, 795 (BIA 2026) (accord). Accordingly, the Court finds the IJ failed to "show proper consideration of all factors when weighing equities and denying relief." *An Na Peng*, 673 F.3d at 1253.

The sole flight risk factors that the IJ cited are, at best, of marginal relevance and neither the IJ—nor Respondents here—explain how these factors could outweigh the substantial evidence that Petitioner presented. First, the IJ cited Petitioner's unauthorized work and unfiled tax returns "as substantial flight risk factors." Dkt. 13-1 at 1. But as numerous courts have

found, "no reasonable inference of flight risk can be drawn from a steady history of employment, authorized or not." *Lemus Crispin v. Bondi*, 832 F. Supp. 3d 534, 545 (E.D. Va. 2026); *Villa v. Mullin*, 834 F. Supp. 3d 957, 962 (C.D. Cal. 2026); *Rodriguez-Pineda v. Hernandez*, No. 26-cv-2367-MLP, 2026 WL 2321531, at *5 (W.D. Wash. Aug. 11, 2026). "Rather, steady employment often reflects economic and residential stability and ties to the community in which the noncitizen is employed." *Lemus Crispin*, 832 F. Supp. 3d at 545.

Moreover, "'unauthorized employment is inextricably related to the unlawful status that has caused [the petitioner's] detention and request for a bond hearing in the first place.'" *Id*. (quoting *Mendez Trisueros v. Guadian, et al.*, 1:26-cv-205-AJT-WBP, Dkt. No. 13, at 6 (E.D. Va. Feb. 18, 2026)). "If an Immigration Judge could consider a noncitizen's unauthorized employment—which typically accompanies a noncitizen's unlawful status—'discretionary detention under § 1226(a)... would become a de facto mandatory § 1225 detention.'" *Id*. A "bond hearing fails to comport with due process where an Immigration Judge relies on considerations that would lead to an automatic denial of bond in all cases." *Id*. at 544 (quoting *Argueta-Portillo v. Bondi*, et al., 1:26-cv-122-MSN-LRV, Dkt. No. 16 (E.D. Va. Mar. 2, 2026)). For similar reasons, courts have found that an IJ abused its discretion in finding a noncitizen a flight risk based on their failure to file tax returns. *See Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *6 (S.D. Cal. Apr. 16, 2026) (finding abuse of discretion where IJ disregarded substantial equities and found flight risk based on noncitizen's "reliance on public assistance, driving without a license, and failure to pay taxes").

The IJ also found that Petitioner's potential relief was "inherently speculative" and "another flight risk factor" because Petitioner had submitted only portions of his application for cancellation of removal. Dkt. 13-1 at 2. But

the IJ determined, based on the records submitted, that Petitioner "does have potentially cognizable relief in the form of a 42B cancellation." *Id.* It is unclear how the IJ could then find that Petitioner's potentially meritorious claims made him less likely to appear in the future. In any event, as this Court has previously found, "all unresolved claims for immigration relief are, by definition, 'speculative,' but that does not mean a noncitizen cannot be trusted to appear for future court proceedings on that basis alone." *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-CV-03007-MBK, 2026 WL 1045196, at *8 (C.D. Cal. Apr. 15, 2026). The IJ did not provide any explanation why the nature of Petitioner's cancellation claim rendered him unlikely to appear in the future, particularly in light of the evidence submitted of his settled life in the United States.

In sum, "[t]he IJ's failure to consider or apply any of the *Guerra* factors and decision to instead rely on three pieces of evidence that 'bear little if any relevance' to Petitioner's risk of flight [] while seemingly ignoring all evidence in Petitioner's favor constitutes a misapplication of the legal standard to the facts." *Perez Velasquez*, N2026 WL 1042479, at *6.

**D. Remedy**

The Court now turns to the appropriate remedy for the IJ's erroneous bond determination.

"In habeas cases, federal courts have broad discretion in conditioning a judgment granting relief." *Lujan v. Garcia*, 734 F.3d 917, 933 (9th Cir. 2013). "Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters as law and justice require." *Id.* (quoting *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987)). "Upon determining that an IJ provided a petitioner with a legally or constitutionally inadequate bond hearing, district courts have either ordered petitioner's immediate release [] or ordered that

Respondents provide petitioner with a new constitutionally adequate bond hearing." *Perez Velasquez v. Bondi*, No. 26-cv-01759-GPC-DDL, 2026 WL 1042479, at *7 (S.D. Cal. Apr. 16, 2026) (collecting cases).

This Court has previously found "a new bond hearing is the appropriate remedy to afford the Immigration Court an opportunity to correct its errors and conduct a bond hearing that complies with governing law." *N.A. v. Warden, Adelanto Det. Facility*, No. 5:25-cv-03007-CV-MBK, 2026 WL 734587, at *9 (C.D. Cal. Feb. 20, 2026), *adopted*, No. 5:25-cv-03007-CV-MBK, 2026 WL 734585 (C.D. Cal. Mar. 12, 2026). However, here, the Court believes it appropriate to order Petitioner's release. At the September 1, 2026, bond hearing, the IJ denied release on bond solely on flight risk grounds. Dkt. 13-1. Because Respondents do not defend that decision on the merits, "the Court finds no basis for Petitioner's continued detention and concludes immediate release with reasonable conditions of supervision is the appropriate remedy." *Soriano v. Hernandez*, No. 2:26-cv-00900-DGE, 2026 WL 969764, at *6 (W.D. Wash. Apr. 10, 2026).

## III. CONCLUSION

For the foregoing reasons, IT IS ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Mateo Roderico Miguel Pedro's (A# 221-462-902) immediate release, subject to reasonable conditions; and (3) Respondents shall file a status report no later than three (3) days from the date of this Order confirming that Petitioner has been released from Respondents' custody consistent with this order.

Dated: September 11, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE